THE CLEVELAND, CINCINNATI, CHICAGO AND ST. LOUIS RAILWAY COMPANY *v.* BAKER ET AL.

[No. 2,814. Filed Oct. 13, 1899. Rehearing denied Feb. 20, 1900.]

PLEADING.—*Justices of the Peace.*—A complaint in an action before a justice of the peace is sufficient on demurrer if it informs the defendant of the nature of the cause of action, and is sufficiently explicit that a judgment thereon will bar another action for the same cause. *pp. 153, 154.*

SAME.—*Complaint.—Attacked for First Time on Appeal.*—Where a complaint states facts sufficient to render the judgment thereon a complete bar to another action for the same cause, it cannot be successfully attacked for the first time on appeal for want of sufficient facts. *p. 154.*

SPECIAL FINDING.— *Conclusions.*— In an action against a railroad company for damages for stock killed at a crossing, statements in the finding of facts that defendant's servants in charge of the train were guilty of negligence in approaching the crossing at a rate of speed of twenty miles an hour, and that plaintiff's servant in charge of the stock was guilty of no negligence contributing to the injury, were not statements of facts, but conclusions of law and fact, and cannot be considered in testing the conclusions of law stated on the finding of facts. *pp. 157, 158.*

Cleveland, etc., R. Co. v. Baker.

NEGLIGENCE.— *Railroads.— Stock Killed at Crossing.*—A railroad company is not rendered liable for stock killed at a crossing by reason of the fact that the train was running at the rate of twenty miles an hour when within 480 feet of the crossing, since such action was not wrongful. *p. 158.*

SAME.—*Railroads.—Stock Killed at Crossing.*—A recovery for stock killed at a railroad crossing cannot be based upon the negligence of defendant to sound the whistle and ring the bell before reaching the crossing, in violation of the statute, where it does not appear that the injury was caused by such negligent omission. *p. 158.*

From the Warren Circuit Court. *Reversed.*

*J. T. Dye, B. K. Elliott, W. F. Elliott, E. F. McCabe* and *C. M. McCabe,* for appellant.

*V. E. Livengood, A. T. Livengood* and *C. W. Dice,* for appellees.

BLACK, J.—The complaint of the appellees against the appellant was in two paragraphs. One of the specifications in the assignment of errors is, that the complaint does not state facts sufficient to constitute a cause of action. In each paragraph the appellees sought to recover the value of two steers killed by a train of cars, in the first paragraph showing that the appellant's railway was not fenced in at the place where the animals entered upon it, and in the second paragraph proceeding upon the ground of negligence.

There was a special finding of facts with the court's conclusion of law thereon, and it appears therefrom, as counsel in their briefs agree, that the judgment for the appellees is not based upon the first paragraph. Therefore, counsel for the appellant have in argument assailed the second paragraph alone. Whether or not under an assignment of error assailing the entire complaint, consisting of more than one paragraph, the judgment may be reversed because of the insufficiency of one paragraph alone, where it clearly appears from the record that the finding and judgment are based thereon, need not be decided in this case, as we are of the opinion that the second paragraph was sufficient to with-

stand the attack first made in this court. The action was commenced before a justice of the peace, and in such case the complaint will be regarded as sufficient even on demurrer, if it inform the defendant of the nature of the cause of action, and be so explicit that a judgment thereon will bar another action for the same cause. *Beineke* v. *Wurgler,* 77 Ind. 468; *Louisville, etc., R. Co.* v. *Argenbright,* 98 Ind. 254; *Watson* v. *Conwell,* 3 Ind. App. 518; *Chicago, etc., R. Co.* v. *Woodard,* 13 Ind. App. 296. Besides, where a complaint, though in a cause originating in the circuit court, states facts sufficient to render the judgment thereon a complete bar to any other suit for the same cause of action, it can not successfully be attacked for the first time in this court for want of sufficient facts. *Donellan* v. *Hardy,* 57 Ind. 393; *Smith* v. *Freeman,* 71 Ind. 85; *Burkett* v. *Holman,* 104 Ind. 6; *Colchen* v. *Ninde,* 120 Ind. 88; *Burkhart* v. *Gladish,* 123 Ind. 337; *Western Assurance Co.* v. *Koontz,* 17 Ind. App. 54; *Bozarth* v. *McGillicuddy,* 19 Ind. App. 26, 40.

In the second paragraph of complaint, after matter of inducement, it was alleged, that on the 27th day of February, 1897, the appellees were possessed of two steers of the value of $65, which cattle, at said time, where the Covington and Crawfordsville State road, or Fifth street, in the city of Covington, in Fountain county, Indiana, crosses or intersects the appellant's railroad, where appellees were driving them upon said road or street and while crossing said railroad, entered on said railroad track; and the appellant while its train was running at the time at a greater rate of speed than that allowed by the ordinance of said city, and failing to give the signals required by said ordiance, and by law, at highway and street crossings, carelessly, negligently, and wrongfully ran and so managed its cars and locomotive that the same was run against and over said cattle, and killed the same, without any fault on the part of the appellees, to their damage in the sum of $75; wherefore, etc. This paragraph,

we think, must be regarded 'as sufficient under attack first made in this court.

The court found and stated the facts substantially as follows: The appellant owns and operates a line of railroad running through Fountain county, Indiana, from east to west, and said line of railroad passes through the corporate limits of the city of Covington, in said county, and in passing through said city crosses a public highway known as the Covington and Crawfordsville road, and said crossing is at a point on said railroad 1,518 feet east of the appellant's depot in said city. Said highway is one of the principal thoroughfares leading from the country into said city, and is much used by the public. Said railroad approaches said crossing from the east through a deep ravine and down a steep grade, and when within 480 feet of said crossing said road makes a sharp curve to the southwest, so that objects on the crossing are not visible to the engineer in charge of any engine approaching said crossing from the east on said railroad, until the engine is within 480 feet of said crossing. Said public highway approaches said crossing from the east down a hill, and, owing to the contour of the ground, a person approaching and crossing on the highway from the east is unable to see an engine approaching from the same direction on the railway until the engine is within 450 feet of the crossing, and the person on the highway is within 470 feet of the same. There is no fence or cattle-guard on the south line of said highway at said crossing. The appellant has a switch 718 feet west of said crossing, which switch is used by the appellant for passing trains and for receiving and discharging freight for said city, and no cattle-guard or fence could be maintained at said crossing by the appellant without endangering the lives and limbs of its employes engaged in switching its cars upon said switch. Said public highway, after rising the hill east of said crossing, runs in an easterly direction, parallel to said railroad and at a distance of from 100 yards to two miles from the same, to the

town of Hillsboro, in said county, and for one-half mile east of said crossing said public highway and said railway are not more than sixty rods apart, but trains running on said railway are not visible from the public highway except as hereinbefore stated. There is a switch on appellant's road one mile east of appellant's depot, which is used by appellant to pass its trains. The court found that "all of said facts were familiar to the appellees and their servant" hereinafter mentioned. A passenger train from the east was due at appellant's station in said city at 2 o'clock and ten minutes p. m., which fact was also known to appellees' servant.

On the 27th of February, 1897, the appellees placed eight head of cattle belonging to them in charge of their servant at said town of Hillsboro, twelve miles east of said city of Covington, for the purpose of being driven by him over said highway into said city, and said cattle were so driven by said servant over said highway to said railway crossing. Said servant approached said crossing, driving said cattle slowly, at five minutes before 3 o'clock, p. m., on said day. Said servant was on foot and close behind the cattle, which, as they approached the crossing, were bunched together. Within a distance of one-half a mile before reaching the crossing said servant observed a freight train passing east over appellant's road. As he approached said crossing said servant continuously listened for the approach of a train over said railroad from the east, but he did not stop said cattle before undertaking to pass said crossing. At the time said servant was approaching the crossing, appellant's passenger train in charge of its servants was also approaching the crossing from the east at a high rate of speed, the train being forty minutes behind time. The engine drawing said train sounded the whistle sixty-five rods east of said crossing, and the fireman on said engine rang the bell continuously from the time said whistle was sounded until the crossing was passed. When the train and engine came around the curve in sight of said crossing, it was running at

the rate of twenty miles per hour, and in coming down the grade approaching said crossing the train was making no noise that could be heard by a passenger on the highway until the whistle sounded, and the approaching train could not be seen by a person on said highway until after its whistle had been heard. The first knowledge said servant of the appellees had of the approach of said train was the sound of its whistle, and when this was heard by him the cattle were within twenty feet of the crossing. Upon hearing the whistle he endeavored to hasten the cattle across the railway. The cattle became frightened at the approach of the train and the whistling of the engine, and two of them ran down the railroad track and were struck by appellant's engine, and one was killed and the other was so injured as to become wholly valueless. But forty-five seconds elapsed from the time the whistle was sounded until the engine and train were upon the crossing. The court found "that in approaching said railroad crossing at the rate of speed hereinbefore stated, the defendant's servants in charge of said passenger train were guilty of negligence;" also, "that plaintiff's servant in charge of said cattle exercised reasonable care in approaching said crossing with said cattle, and was guilty of no negligence contributing to the injury." The cattle were worth $65.

The court stated as its conclusion of law upon the foregoing facts that the appellees were entitled to recover from the appellant $65; to which conclusion the appellant excepted.

The statements near the end of the special finding that in approaching the crossing at the rate of speed thereinbefore mentioned the appellant's servants were guilty of negligence, and that the servant of the appellees exercised reasonable care in approaching the crossing with the cattle, and was guilty of no negligence contributing to their injury, were not statements of matters of fact, but were conclusions of law and fact; and they must be left out of consideration

in testing the conclusion of law stated upon the findings of fact. This has been decided so frequently that it is quite familiar to the profession.

Treating the finding as showing that the public crossing was within the corporate limits of the city, it does not appear that there was any ordinance of the city relating to the speed of trains. The crossing was much used by the public, and this may be truthfully said of very many public crossings, but it does not follow that it is negligence for a railway train, when approaching a much used highway crossing and at the distance of 480 feet from it, to be running at the rate of twenty miles an hour. The failure to sound the whistle and ring the bell when at the distance of eighty rods from the crossing, or until the engine had reached a place sixty-five rods therefrom, was, under the statute, negligence, but it does not appear that the injury was caused by this negligent omission. The injury occurred because the servant endeavored to hasten the cattle across the railway, and they became frightened at the approach of the train and the whistling of the engine, and ran along the railway track till struck by the engine..

If it may be inferred that the injury occurred because of the speed of the train, it does not appear that this was wrongful.

The conduct of the appellees, through their servant, who with them knew all the peculiarities and dangers of the undertaking, in sending the cattle with a single driver, on foot, to the neighborhood of the crossing, and in endeavoring to hasten the cattle across the railroad in front of the rapidly approaching train, was, probably, matter concerning which reasonable men might honestly differ, but the ultimate fact that the appellees and their servant acted as persons of ordinary prudence would act under like circumstances was not stated.

If the facts stated were sufficient to support a conclusion that the injury was produced by actionable negligence on

the part of the appellant, it might be proper, in view of the facts stated affecting the question of contributory negligence, to award a new trial; but in the absence of facts from which the appellant's want of reasonable care might be inferred, we must proceed upon the theory that no such facts were shown on the trial, and, therefore, must hold that the court erred in not stating a conclusion of law in favor of the appellant.

Judgment reversed.